**LA PERLA FASHIONS, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

Slip Op. 98–50.
Court No. 96–03–00741.

United States Court of
International Trade.

April 17, 1998.

Barnes, Richardson & Colburn (Sandra Liss Freidman and Alan Goggins), for Plaintiff.

Frank W. Hunger, Asst. Atty. General; Joseph I. Liebman, Atty. in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (Saul Davis), for Defendant.

## OPINION

MUSGRAVE, Senior Judge.

Plaintiff La Perla Fashions, Inc. ("La Perla" or "LPF") brings this action to contest the valuation made by the United States Customs Service ("Customs") on imports of three styles of women's apparel. In this three-tiered transaction, La Perla imported merchandise from its parent company, Gruppo La Perla, S.p.A. of Bologna, Italy ("GLP"), and resold the merchandise to retailers in the United States. Customs valued the subject merchandise based on the price paid by the U.S. customers of La Perla. La Perla contends that the correct transaction value is the price between La Perla and its related supplier GLP. The Court has jurisdiction over this action under 28 U.S.C. § 1581(a) and finds that Customs correctly valued the subject merchandise pursuant to 19 U.S.C. § 1401a on the basis of La Perla's selling prices to its customers in the United States.

## Background

The subject merchandise is comprised of three styles of women's apparel imported and distributed by La Perla in 1995. La Perla imports swimwear, foundation garments, lingerie, sleepwear and ready to wear from its supplier, a related company, GLP. The three garments at issue were manufactured by the MB International division of GLP identified as Valmy, a top, Kappa, a bodystocking, and Arquette, a dress. Before 1991, GLP sold apparel directly to U.S. buyers through sales agents. La Perla was activated as a New York corporation in 1991 and became the wholesale distributor for GLP, although GLP continued to sell garments directly to U.S. customers and employed sales agents after La Perla was activated. The terms of sale between La Perla and GLP was ex-works, plus insurance. The terms of sale between La Perla and its U.S. customers were delivered at customer's premises, duty-paid.

Customs appraised the importation of the three styles of garments based on the transaction value ("TV") of the prices between La Perla and its U.S. customers, less the amounts deducted for international freight, insurance, Customs duties and various other minor charges. La Perla requested a ruling on Customs' appraisal contending that the correct transaction value should be based on the prices that GLP charged La Perla. Customs audited the entries at issue and concluded in HQ 544957, dated April 7, 1995, and HQ 545991, dated June 15, 1995, that there was no *bona fide* sale between GLP and La Perla and affirmed Customs' transaction values based on the price La Perla charged its U.S. customers. La Perla subsequently brought this action maintaining that the transactions between GLP and La Perla were *bona fide* sales at fair prices that approximated statutory test values of deductive value ("DV") and constructed value ("CV"). La Perla further asserts that the sales made to its U.S. customers were domestic sales

which would negate transaction value based on the transaction from GLP to La Perla.

## Standard of Review

Under 28 U.S.C. § 2639(a)(1), Customs' decision is "presumed to be correct" and the "burden of proving otherwise shall rest upon the party challenging such decision."[1] However, recent decisions from the Court of Appeals for Federal Circuit ("CAFC") have ruled that the presumption of correctness applies solely to factual questions and that this Court's duty is to find the correct result. The duty of the Court to find the correct result in a valuation case stems from both legislative and judicial sources. The CAFC recently found that "the trial court . . . must consider whether the government's classification is correct, both independently and in comparison with the importer's alternative. . . . [T]he court's duty is to find the correct result, by whatever procedure is best suited to the case at hand." *Jarvis Clark Co. v. United States,* 2 Fed. Cir. (T) 70, 75, 733 F.2d 873, 878 (1984). Pursuant to the statute, "[i]f the Court of International Trade is unable to determine the correct decision on the basis of the evidence presented in any civil action, the court may order a retrial or rehearing for all purposes, or may order such further administrative or adjudicative procedures as the court considers necessary to enable it to reach the correct decision." 28 U.S.C. § 2643(b).[2] The Court reviews this case *de novo* in order to determine the questions of: (1) the influence of the related parties on sales price; (2) which transaction was appropriate to value the subject merchandise; and (3) the role of deductive and computed value calculations in determining the correct valuation of the merchandise.

## Discussion

Importers and foreign manufacturers have an interest in lowering the overall duties

---

1. 28 U.S.C. § 2639(a)(1) (1994).

2. *See Goodman Mfg., Inc. v. United States,* 13 Fed. Cir. (T) ——, ——, 69 F.3d 505, 508 (1995) (the statutory presumption of correctness attaches only to an agency's factual determinations) *and Rollerblade, Inc. v. United States,* 15 Fed. Cir. (T) ——, ——, 112 F.3d 481, 483 (1997) (legal issues are not afforded deference under 28 U.S.C. § 2639 or under the administrative deference standard promulgated in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

placed on merchandise upon importation. One method of lowering import duties is to reduce the invoice price on the subject merchandise. When merchandise is sold between unrelated parties, an arm's length price is agreed upon, reflecting pressures of market forces, and it is this price that is declared to Customs upon importation. When merchandise is imported from a related party, however, market forces are absent from pricing. Related parties have the ability and opportunity to lower the prices charged to the related importer which proportionally reduces the associated import duties that are imposed as a percentage of the value of the imported merchandise. When the related importer resells to U.S. customers, a three-tiered transaction is created. The net profits made by the exporter on the subject merchandise are unaffected in a three-tiered transaction since the related importer resells to the open market, returning to the exporter any loss of revenue from the reduced-price sale to the importer. This ability and opportunity of import duty evasion motivated Congress to enact protective legislation and to direct Customs to closely scrutinize related party transfer pricing.

On the other hand, Congress, cognizant of the public policy of fostering trade, provided for means by which related parties could prove that their transfer pricing adequately reflected the equivalent of or at least a reasonable approximation of arm's length transactions resulting from the pressures of market forces. Congress enacted the valuation statute to control the methodology Customs employs in determining the basis of valuing imported merchandise. Congress was aware of the competing interests when it drafted the valuation statute. Congress wanted to protect Customs' legitimate income from imports but not at the expense of proper trading relationships. *See* 102 Cong. Rec. S13256–302 (daily ed. July 18, 1956) *and* S.Rep. No. 96–249, at 114–23 (1979), *reprinted in* 1979 U.S.C.C.A.N. 381 at 500–509. The Court recognizes the tension inherent in the valuation statute as well as the underlying interests involved in its etymology and finds that Customs correctly valued the subject merchandise on the transaction value between La Perla and its U.S. customers for the reasons that follow.

## I. Related Party Transaction Value

■ Customs is directed to value imported merchandise based on 19 U.S.C. § 1401a. The statute reads

§ 1401a. Value

(a) Generally

(1) Except as otherwise specifically provided for in this chapter, imported merchandise shall be appraised, for the purposes of this chapter, on the basis of the following:

(A) The transaction value provided for under (b) of this section.

\*      \*      \*

(b) Transaction value of the imported merchandise

(1) The transaction value of imported merchandise is the price actually paid or payable for the merchandise when sold for exportation to the United States, . . .

19 U.S.C. § 1401a (1988). Related party transfers are covered under 19 U.S.C. § 1401a(b)(2) which provides:

(A) The transaction value of imported merchandise determined under paragraph (1) shall be the appraised value of that merchandise for the purposes of this chapter only if-

\*      \*      \*

(iv) the buyer and seller are not related, or the buyer and seller are related but the transaction value is acceptable, for purposes of this subsection, under subparagraph (B).

(B) The transaction value between a related buyer and seller is acceptable for the purposes of this subsection if an examination of the circumstances of the sale of the imported merchandise indicates that the relationship between such buyer and seller did not influence the price actually paid or payable; or if the transaction value of the imported merchandise closely approximates-

(i) the transaction value of identical merchandise, or of similar merchandise,

in sales to unrelated buyers in the United States; or

(ii) the deductive value or computed value for identical merchandise or similar merchandise;

but only if each value referred to in clause (i) or (ii) that is used for comparison relates to merchandise that was exported to the United States at or about the same time as the imported merchandise.

19 U.S.C. § 1401a(b)(2) (1988). The statute directs Customs to value the merchandise at the price paid or payable, a *bona fide* sale, unless the transfer is between related parties where the relationship affected the price. When it is found that the buyer and seller are related parties, the statute next calls for valuation based on a transaction value of the transfer if it closely approximates the transfer price of identical or similar merchandise to unrelated buyers in the U.S. or deductive or computed value. The first question for the Court then is whether the transaction between GLP and La Perla was a *bona fide* sale reflecting an arm's length agreement or was the transfer price affected by their relationship.

La Perla first claims that the correct basis for transaction value is the sales between GLP and La Perla under § 1401a(b)(1) since the "transactions between GLP and [La Perla] were *bona fide* sales." Pl.'s Post–Trial Br. ("Pl.'s Br.") at 18. As evidence of *bona fide* sales reflecting arm's length purchasing, La Perla asserts that it is responsible for its own bank accounts, accounting and financial records, resale pricing negotiating authority, inventory, risk of non-payment by customers, risk of loss and the authority to accept orders without approval. Pl.'s Br. at 20–23.

Customs valued the subject merchandise based on the sale between La Perla and its U.S. customers. Customs rejected the price between GLP to La Perla since it was affected by their close relationship and, therefore, "irreparably negate[d] a TV." Def.'s Post–Trial Br. (Def.'s Br.") at 25. Customs asserts that under the stipulation of facts, where La Perla and Customs agreed that the "relationship between [La Perla] and GLP,

and the circumstances of sale between them, affected the prices between them,"[3] La Perla is precluded from utilizing the transaction value under § 1401a(b)(1) between the parties as a basis for valuation. Def.'s Br. at 24.

Customs and La Perla argue exhaustively on the agency relationship between GLP and La Perla but the Court finds that the stipulation takes the related party transfer price out of the realm of § 1401a(b)(1) and into the related party provision under § 1401a(b)(2)(B). The key to the resolution of valuation issues involving related parties is establishing an objective market-based price of the subject merchandise. The determination that an agency relationship exists only answers the first requirement of the statute, as transaction value can properly be utilized between related parties if the relationship does not affect the transfer price. The Court recognizes that the statute emphasizes the focus on the transfer price, not the presence of an agency relationship. Once La Perla stipulated that the transfer price was affected by their relationship with GLP, its burden is to prove approximate value under § 1401a(b)(2)(B).

La Perla cites *Dorf International, Inc. v. United States*, 61 Cust. Ct. 604 (1968) and *Service Afloat, Inc. v. United States*, 68 Cust. Ct. 225 (1972) as distinguishable from the instant case with respect to agency. Pl.'s Br. at 22–24. In these two cases, the court found that the parent company exerted nearly complete control over the related importer resulting in the court finding that an agency relationship existed. La Perla confuses the focus of the valuation statute. The Court reiterates that the locus of valuing imported merchandise is predicated on the price of the same or similar merchandise that is negotiated at arm's length reflecting market-based influences and does not rely on a finding of agency. Even though La Perla provided evidence that business decisions were made independent of the influence exerted by GLP, the Court finds that an agency relationship exists nonetheless due to the stipulation that the relationship between GLP and La Perla affected the transfer price.

---

3. Agreed Stipulation of Fact, Jan. 28, 1997.

Since GLP and La Perla are related parties and the transfer price was affected by their relationship, the Court finds that transaction value under § 1401a(b)(1) is inapplicable. At trial, La Perla did not provide evidence, such as volume discounts or reduced expenses, that would account for the price discrepancy between the related parties. La Perla cites many factual similarities with the importer in another valuation case involving a three-tiered transaction, *Wood v. United States*, 62 C.C.P.A. 25, 505 F.2d 1400 (1974), where the court found that the goods were correctly valued at the price between the related parties. Pl.'s Br. at 18–20. As the Court found in *VWP of America, Inc. v. United States*, 21 CIT ——, 980 F.Supp. 1280 (1997), "[t]he glaring difference between the two cases is that the parent company in *Wood* sold the subject merchandise to an unrelated third party in the U.S. at the same price"[4] as that charged to the related party, while GLP sold merchandise to La Perla and unrelated third parties at markedly different prices. .

In fact, La Perla cites to Customs' omission to review La Perla's "resale transactions, or any alleged commercial relationship between GLP and [La Perla's] U.S. customers." Pl.'s Br. at 25. The Court, however, has reviewed those resale transactions and the commercial relationships along the three-tiered transactions found in the trial record in the form of invoices. While the record was far from complete, the Court finds that the three-tiered transactions between GLP, La Perla and the final U.S. customers compared to the transactions between GLP and its direct U.S. customers illuminates the reality of the three-tiered transaction. The Court found that GLP was selling the same merchandise to direct U.S. customers at a price that was within two percent of the price that La Perla charged its U.S. customers. GLP sold the same merchandise to La Perla for more than 35 percent less than the price charged to GLP's direct customers. In essence, U.S. customers were paying approximately the same price for the same merchandise sold by GLP and La Perla. La Perla, consequently, was receiving the benefit of the lower price paid to GLP.

■ The Court finds that the sales from GLP to its direct U.S. customers provides the necessary comparison transaction with an unrelated party in the U.S. Since the price between La Perla and its U.S. customers is approximately the same as the price GLP sells to unrelated parties in the U.S., the Court finds that this price fairly reflects the market price of the subject merchandise. As the court in *Wood* stated:

> In this case, we have all necessary market evidence, since Carter, Ltd., sells for export to selected purchasers in the United States—Carter, Inc., and the OEMs. The price to the OEMs and to Carter, Inc., is the same. Because the OEMs are unrelated to Carter Ltd., or Carter, Inc., further proof of what price the merchandise is able to command in the market is not needed. We join the trial court in saying: "What better proof is there of the price fairly reflecting the market value when sales are made to other unrelated United States concerns at the same basic price."

*J.L.Wood v. United States*, 62 C.C.P.A. at 33, 505 F.2d at 1406 (citation omitted). The same situation present in *Wood* is operative in the instant case. This evidence leads the Court to find that the transactions between La Perla and its U.S. customers best reflects the market-based value of the subject merchandise since they closely approximate the sales from GLP to unrelated third parties in the U.S.

La Perla claims that the sales to its U.S. customers "have all the indicia of U.S. sales contracts" precluding a finding that this transaction would qualify as a sale for exportation into the U.S. under the statute. Pl.'s Br. at 38. To support this assertion, La Perla cites *United States v. Massce & Co.*, 21 C.C.P.A. 54 (1933), a similar case involving a three-tiered transaction where the court found that "where offers of sale, agreements to sell, and sales are all made in the United States, and none in a foreign country, there cannot be an export value of the exported merchandise involved in such transactions,

---

**4.** *VWP of America, Inc. v. United States*, 21 CIT ——, ——, 980 F.Supp. 1280, 1286 (1997).

..." *Id.* at 60. La Perla also directs the Court to the holding in *Orbisphere Corp. v. United States,* 13 CIT 866, 726 F.Supp. 1344 (1989), involving another three-tiered transaction where the Court found that the transaction between the importer and its U.S. customers qualified for a domestic sale and not a sale for exportation. Pl.'s Br. at 39.

The courts found two *bona fide* sales involved in the three-tiered transactions in both *Massce* and *Orbisphere.* In the instant case, however, the Court finds that there is only one *bona fide* transaction: the sale between La Perla and its U.S. customers. Transaction value cannot be based on a transaction that is found not to be a *bona fide* sale. Therefore, the Court finds that transaction value can only be based on La Perla's price charged to its U.S. customers.

## II. Deductive and Computed Value

■ La Perla argues that deductive and computed value of the subject merchandise closely approximates the transaction value between GLP and La Perla satisfying § 1401a (b)(2). Pl.'s Br. at 25–37. La Perla provided witnesses who testified that the computed value for the garments in question were calculated "in accordance with the statute directly from the audited accounting records of GLP." *Id.* at 26. In addition, La Perla maintains that the accounting records used for the computed value analysis were kept in accordance with Italian law and generally accepted accounting principles ("GAAP") in Italy. *Id.* at 27. La Perla maintains that "[s]ince the computed value statement was prepared in accordance with generally accepted accounting principles, it cannot be rejected by the government merely because the government might have chosen different allocation methods ... [m]oreover, this Court need not exclude this evidence from consideration merely because it was not created exactly as Customs would have liked." *Id.*

Similarly, La Perla introduced deductive values for the three garments that they claim closely approximate the transfer prices from GLP to La Perla. *Id.* at 32. La Perla reiterated that the figures used in preparing the deductive values were "in accordance with generally accepted accounting principles, [and] cannot be rejected by the government merely because the government might have chosen different allocation methods." *Id.* at 35.

Customs argues that the computed and deductive values submitted by La Perla were not acceptable because the evidence presented was inadmissible. Specifically, Customs claims that the evidence was inadmissible because it represented summaries or summaries of summaries that were not verifiable by a Customs auditor. Def.'s Br. at 31. In fact, Customs stated that their auditor

> could not verify the bases for virtually all of the critical factual information relating to [La Perla's] proposed CV comparisons, and unequivocally testified that in his experience there have been occasions where information submitted based upon a companies [sic] summaries of business records and financial statements were erroneous and understatements of value, even though the basic documents were audited business records of the company.

*Id.*

Finally, Customs contends that La Perla "failed to prove the existence of a DV or CV for identical or similar merchandise, as contemplated by the statute and decisions of the courts involving materially identical statutory provisions." Def.'s Br. at 26. Customs claims that any computed or deductive value calculations that are based on the transaction between related parties are void under the statute based on the belief that the values are inherently flawed. Customs cites to § 1404a(h)(2) and (3) for the proposition that the statute

> contemplate[s] that: (a) where the price between the parties was affected by the relationship, and a DV or CV comparison must be made, in the first instance one must use the DV or CV for identical or similar merchandise that is manufactured by the same manufacturer that made the importations, but which is made up of elements that are not prejudiced because of the relationship—involving sales to unrelated parties; (b) if there is no DV or CV for that type of merchandise then one looks to the DV or CV of that type of

merchandise, but which is manufactured by another person in the same country of exportation.

*Id.* at 27, n. 10.

The Court finds that its examination of the transactions in the trial record provide the objective, market-based price of the subject merchandise upon which this opinion is based. The computed and deductive values submitted by La Perla exposed the dangers of utilizing unverified deductive and computed values to value merchandise. First, as the Court held in *VWP*, "value comparisons using allocations of costs verified and in compliance with GAAP do not necessarily provide the Court with accurate information with respect to the import statute in the U.S." *VWP of America, Inc. v. United States*, 21 CIT ——, ——, 980 F.Supp. 1280, 1288 (1997). La Perla's use of cost information derived from audited records does not provide the Court with inherently accurate information. The purpose behind Customs' verification procedures is to ensure that an accurate computed and deductive value calculation is formulated. The Court agrees with Customs that La Perla's failure to provide the records that laid the foundation for the summaries presented at trial prevents a verification of La Perla's computed and deductive value calculations. Without a verifiable record, Customs was correct in rejecting La Perla's computed and deductive value formulations. The Court rejects La Perla's computed and deductive value calculations because of their lack of reliability, not their form.

Second, as a practical matter, La Perla's failure to provide the supporting information raises the specter that they are withholding information. It is clear from the record that Customs persistently requested the underlying records that were used to compile the computed and deductive values prepared by La Perla. The reluctance of La Perla to provide this information casts doubt as to what that record contained. If there were no discrepancies in the underlying records, it would seem that La Perla would have been more forthcoming in furnishing them to Customs and the Court.

Finally, the Court finds that there is no support in the statute for Customs' contention that computed and deductive value calculations must be derived from an unrelated manufacturer or exporter. The Court can envisage scenarios where a manufacturer sells unique merchandise to a single related importer in the U.S. In this situation there would be no comparable unrelated third party transfer with which to compare cost information. Customs wishfully reads into the statute a condition for comparison to unrelated party sales from exporter to importer where there is none. Customs should have instead focused its scrutiny on the comparison of the price charged by GLP to its direct U.S. customers with the price between GLP and La Perla. It is this comparison that the Court finds provides the requisite market-based price upon which the correct valuation is based.

### Conclusion

For the foregoing reasons, the Court finds that the subject entries of garments were correctly valued on the price between La Perla and its customers in the United States. Accordingly, judgment is entered for the defendant and this case is dismissed.

### JUDGMENT

Upon conducting trial, reading plaintiff's post trial and reply briefs, defendant's post trial and reply briefs, and upon consideration of all other papers and proceedings had herein, it is hereby

**ORDERED**, that valuation of the subject merchandise is properly based on the transaction value between the plaintiff and its U.S. customers; and it is further

**ORDERED** that the defendant's valuation based on the transaction value between the plaintiff and its U.S. customers is correct and affirmed.